Patricia **SCHNEE**, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1997.

Decided Oct. 24, 1997.

Peter B. Macky, Sunbury, for petitioner.

Maribeth Wilt-Seibert, Assistant Counsel, Harrisburg, for respondent.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Patricia Schnee (Claimant) appeals from an order of the Unemployment Compensation Board of Review (UCBR), dated November 15, 1996, affirming the referee's decision to deny benefits to Claimant. We reverse.

While Claimant was receiving unemployment compensation due to a layoff from a previous employer, she contacted Kramm's Nursing Home (Employer) regarding work in its kitchen. Employer had no kitchen work available, but the personnel director offered Claimant a job as a nurse's aide which Claimant accepted.

Prior to beginning work, Claimant underwent a pre-employment physical with her physician Donald C. Steckel, M.D. Employer's pre-employment physical form listed Claimant's position as "CNA Training"; the form did not provide any information regarding the physical requirements of the job and did not ask if Claimant could lift patients. Dr. Steckel's physical examination revealed that Claimant could move her back within normal limits and that Claimant had never had any back injury requiring treatment by a physician or chiropractor. (Exhibit E–1.) Although Claimant suffered from degenerative arthritis, diagnosed by an out-patient x-ray in 1988, (Exhibit C–2), Dr. Steckel stated on the form that Claimant had no physical disabilities that would interfere with the job. (Exhibit E–1.)

Claimant worked as a nursing assistant trainee from July 15, 1996 to July 19, 1996, at the rate of $5.55 per hour. (UCBR Findings of Fact, No. 1.) After this week of classroom training,[1] Claimant realized that she could not perform the lifting duties of the job because of her arthritis. (UCBR Findings of Fact, No. 6.) She informed the personnel director who agreed with Claimant's evaluation, and Claimant voluntarily quit. (UCBR Findings of Fact, Nos. 6, 7.)

Claimant applied for unemployment compensation benefits with the local Job Center but was denied on the grounds that she voluntarily terminated her employment. Following an appeal, the referee affirmed the Job Center's determination and, on further appeal, the UCBR affirmed the referee and denied benefits. The UCBR concluded that Claimant had good cause to leave her employment, but held Claimant was ineligible for benefits because she was unemployed due to her own fault, since she never informed Employer about her back condition.

Claimant now appeals the UCBR's decision to this court[2] raising two issues: 1) whether substantial evidence exists to support the UCBR's Findings of Fact, No. 3, that when Claimant went to her pre-employment physical, she did not inform Employer about her degenerative arthritis; and 2) whether the UCBR erred in concluding that Claimant is disqualified from receiving benefits.

Initially, in resolving these issues, we note that there is no mention of Claimant's back

---

1. The classroom training included a film on arthritis and a tour of the facility where claimant saw "many patients who were combative or ... just dead weight." (N.T. at 4.)

2. Our scope of review is limited to determining whether the UCBR's findings of fact are supported by substantial evidence, whether an error of law was committed or whether the parties' constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Herbert v. Unemployment Compensation Board of Review*, 131 Pa.Cmwlth. 601, 571 A.2d 526, *petition for allowance of appeal denied*, 527 Pa. 655, 593 A.2d 426 (1990).

condition on the pre-employment physical form and that Claimant herself admits that she did not otherwise inform Employer of her arthritic condition. Thus, there is substantial evidence to support the UCBR's Findings of Fact, No. 3. Additionally, we agree with the UCBR's determination that Claimant had good cause to quit her job.[3] However, our agreement with the UCBR ends here.

Despite concluding Claimant had good cause to quit her job, the UCBR used section 3 of the Unemployment Compensation Law[4] (Law) as a guide in its decision to deny Claimant benefits. Section 3 states that the Law's purpose is to provide benefits to workers who are unemployed through no fault of their own. *Allegheny Valley School v. Unemployment Compensation Board of Review,* — Pa. —, 697 A.2d 243 (1997). The UCBR concluded that Claimant had to quit because she concealed material information from Employer at the time of hire, and therefore, Claimant's unemployment was her fault. Although it was proper for the UCBR to apply the declared public policy of section 3 as a guide by which to interpret and construe the individual sections of the Law, *Allegheny*; *Kawa v. Unemployment Compensation Board of Review,* 132 Pa.Cmwlth. 446,

573 A.2d 252, 255 (1990), we disagree that Claimant was at fault.

Fault has been defined as "an act to which blame, censure, impropriety, shortcoming, or culpability attaches." *Mills Unemployment Compensation Case,* 164 Pa. Superior Ct. 421, 426–27, 65 A.2d 436, 439, *rev'd on other grounds,* 362 Pa. 342, 67 A.2d 114 (1949). Claimant concedes that she did not tell Employer about her degenerative arthritis; however, Claimant argues that she is not at fault because she did not understand what the physical requirements of the job were and, thus, did not know her back condition was material and should have been disclosed. After reviewing the record, we agree that nothing Employer did prior to Claimant's hire notified Claimant that her back condition was material.[5]

Although Employer's personnel director told Claimant she would have to lift patients, the personnel director does not know if she ever told Claimant the weight she would have to lift. Additionally, Employer's own pre-employment physical form listed the position as "CNA Training"; the form did *not* indicate that Claimant would be required to lift patients or that she would be required to lift a certain amount of weight. Accordingly,

---

**3.** Section 402(b) of the Unemployment Compensation Law (Law) provides: "An employe shall be ineligible for compensation for any week... [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." Act of December 5, 1936, Second Ex.Sess. P.L. (1937) 2897, *as amended,* 43 P.S. § 802. A claimant who voluntarily terminates her employment has the burden of proving that the termination was for cause of a necessitous and compelling nature. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). Whether one had cause of a necessitous and compelling nature is a legal conclusion and is fully reviewable by an appellate court. *Id.*

Although the Law does not define what constitutes "cause of a necessitous and compelling nature", our supreme court has described it as follows:

'good cause' for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person un-

der the circumstances to act in the same manner.

*Id.* at 358–59, 378 A.2d at 832–33.

Medical problems can provide good cause for voluntarily leaving one's employment, *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982), and Claimant's medical condition rendered her unfit to perform her job duties. (UCBR Decision at 2.) In fact, when Claimant informed Employer that her medical condition prevented her from lifting patients as required, Employer agreed that Claimant could not perform the job. (UCBR Decision at 2.)

**4.** 43 P.S. § 752.

**5.** Although Employer's witness testified that its job description for a nursing assistant indicates a requirement of being able to lift 75 pounds, this job description was not offered into evidence. (N.T. at 7.) The record does not reveal whether the job description that Claimant signed contained this information. (N.T. at 7.) Additionally, Claimant had no experience with nursing homes. (N.T. at 5.)

Employer failed to request appropriate and job-related information on this form.

Claimant's conduct certainly does not rise to the level of fault. On her own, Claimant sought employment, specifically kitchen work, in an effort to remove herself from the unemployment rolls; it was Employer who suggested the nurse's aide position to Claimant. Claimant can not be faulted for Employer's failure to tell Claimant about the nature and extent of the required lifting or for Employer's failure to provide an accurate and adequate job description on its pre-employment physical form. Once Claimant had a week of training and became aware of the physical demands of the job, she promptly disclosed her condition to Employer.

Because Claimant had a necessitous and compelling reason to terminate her employment[6] and because Employer did not adequately and accurately inform Claimant of the requirements of the job, thereby necessitating Claimant's informing Employer of her back condition, we conclude that Claimant was unemployed through no fault of her own. Accordingly, we reverse.

### ORDER

AND NOW, this 24th day of October, 1997, the order of the Unemployment Compensation Board of Review, dated November 15, 1996, is reversed.

---

**6.** We recognize that, in general, acceptance of employment indicates that the terms of employment are suitable. *Naylon v. Unemployment Compensation Board of Review,* 83 Pa.Cmwlth. 502, 477 A.2d 912 (1984); *Johnson v. Unemployment Compensation Board of Review,* 69 Pa. Cmwlth. 303, 450 A.2d 1095 (1982). However, where an employee was reasonably unaware of the unsuitable conditions when the employee accepted the employment, the presumption of suitability can be overcome, and a necessitous and compelling reason may exist. *Naylon; Johnson.* Such is the case here.